### TEXAS ELECTRIC RY. v. BLANK. *
#### (No. 8714.)

(Court of Civil Appeals of Texas. Dallas. Dec. 2, 1922. Rehearing Denied Jan. 20, 1923.)

1. Carriers ⬤⇒69(3)—Trial ⬤⇒110—Questions as to situation of family held not appeal to sympathy in action for failure to transport a corpse, and not immaterial and irrelevant to any issue.

In an action for a carrier's failure to transport a corpse as agreed, whereby the funeral was delayed and had to be shortened, questions as to the whereabouts of plaintiff's children at the time, and as to who accompanied plaintiff to the station, were not erroneous, as calculated only to arouse the sympathy of the jury and as immaterial and irrelevant to any issue.

2. Trial ⬤⇒75—Not error to permit questions as to facts otherwise established without objection.

It was not error for the court to admit over objection testimony as to facts which were all testified to without objection at another stage of the trial.

3. Carriers ⬤⇒69(3)—Evidence of intention to permit viewing of remains at place of burial and inability to do so held admissible to show damage for breach of contract to transport dead body.

In an action against a carrier for breach of its contract to transport the remains of plaintiff's wife to the place of burial, evidence that plaintiff had intended to open the casket at the place of burial to permit friends to view the remains, but was unable to do so because of the delay resulting from defendant's breach,

was admissible as establishing one of the elements of damage for which recovery was sought.

4. Carriers ⬤⇒69(3)—Evidence held to sustain finding of agreement to transport corpse on particular car.

Evidence in an action against an interurban electric railway company *held* to sustain the jury's finding that the defendant agreed to transport the corpse on a designated car, so that it breached its contract by refusing to do so, though its offer to transport the corpse on a later car was refused by the undertaker. who transported it by automobile.

5. Carriers ⬤⇒69(3)—Evidence held to authorize recovery for mental anguish resulting from failure to transport corpse.

Though testimony by plaintiff that the delay in transporting the corpse of his wife to the place of burial disturbed his mind and was very unpleasant was insufficient alone to justify the jury in finding humiliation or mental anguish, such finding could be based thereon in connection with a consideration of the facts and circumstances attending the delay which resulted from the failure to transport and its consequences.

6. Carriers ⬤⇒69(4) — $1,000 for failure to transport corpse, which delayed funeral 1 hour and 20 minutes, reduced to $500.

In an action for a carrier's refusal to transport the corpse of plaintiff's wife on the car agreed, where the refusal delayed the funeral 1 hour and 20 minutes and caused the ceremony to be somewhat shortened, preventing an opportunity to permit friends to view the remains, a judgment awarding $1,000 damages was excessive, and must be reversed, unless plaintiff agrees to remit therefrom $500.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by F. W. Blank against Texas Electric Railway. Judgment for plaintiff, and defendant appeals. Affirmed on condition plaintiff remits $500 from the judgment; otherwise reversed and remanded.

Templeton, Beall, Williams & Worsham, of Dallas, and Wear, Wood & Wear, of Hillsboro, for appellant.

Collins, Dupree & Crenshaw, of Hillsboro, for appellee.

SERGEANT, C. J. Appellee, F. W. Blank, with his wife and three daughters, lived in Hillsboro. On the night of September 3, 1920, Mrs. F. W. Blank died in a sanitarium in Fort Worth, and on September 4th her body was transported over the Missouri, Kansas & Texas Railway from that place back to Hillsboro. The remains were held at their home pending the arrival of their son from Akron, Ohio. When the body reached Hillsboro, the undertaker, R. B. Leatherwood, who had charge of the funeral, called on W. J. Grissett, agent of the Texas Electric Railway, appellant, with a view to making ar-

---

rangements for transporting the remains to Waxahachie for interment in the family buying ground there. Tentative arrangements were then made. Later, on September 6th, about 1 o'clock, Leatherwood told Grissett that he wished to have the body transported on the local car of appellant, which was scheduled to reach Hillsboro the following afternoon at 3:47. Grissett assented to this, and notified the express company of the plans, telling them not to load any baggage on that particular car, as Mrs. Blank's body was to be carried on it from Hillsboro to Waxahachie. About 24 hours later, and at 1 o'clock on September 7th, just prior to the funeral, Leatherwood called at appellee's interurban station and purchased from Grissett two tickets. One of these he had Grissett mark "Corpse ticket," and advised him that the remains would be there for the 3:47 car, and in about 2½ hours as planned. The funeral services were had at Hillsboro, and the funeral party reached the station a few minutes later, before the car came in. On the arrival of the car the funeral party got on board, but it was discovered that the car was of the limited type, having no compartment for baggage or facilities for carrying the remains. Leatherwood complained to Grissett about this, and together they went to the conductor, and requested permission to place the body in this car on the back of the seats. On the conductor's refusal, they went to the telephone, where Grissett telephoned the train dispatcher, who also declined to permit the body to go on that particular car. The dispatcher stated that a car of local type would reach Hillsboro at 5:47 that afternoon, and would carry the body. Leatherwood declined to assent to this, and again went to the conductor, requesting him to hold the car until he could talk further with Grissett with reference to arranging for some method of transportation on this car. While he was conversing with Grissett the car, having waited 8 minutes at Hillsboro, proceeded on its journey without the body. Leatherwood, declining to wait until the 5:47 car, placed the body in his own automobile hearse, and transported it therein overland to Waxahachie, arriving there 1 hour and 20 minutes later than the 3:47 interurban car. Appellee had intended placing the casket in the Spaulding Undertaking Parlors at Waxahachie for the purpose of opening it and permitting the friends of the family to view the remains for the last time. But as it was only 30 minutes until dark, this was omitted, and the funeral proceeded immediately upon arrival. At the grave a very short service was had, and the body buried without the casket being opened. Appellee then brought this suit for damages, alleging humiliation, mental anxiety and anguish by reason of the above-mentioned acts, conduct, and omissions of appellant. The case was submitted to the jury on special issues, and they found that appellant was guilty of negligence in not furnishing a local type car at 3:47 as agreed; that appellee had sustained the mental suffering alleged, and assessed the measure of his damages at $1,000. From a judgment for this amount, upon the finding of the jury, appellant appeals to this court.

[1, 2] Appellant contends that certain questions asked appellee while on the witness stand had only the effect of arousing the sympathy of the jury, and were immaterial and irrelevant to any issue in the case. These questions were as to the whereabouts of appellee's children at the time the body was brought to Hillsboro, as to whether appellee's son arrived there before the funeral, and as to who accompanied appellee to the station. We do not believe that these questions were calculated to arouse the sympathy of the jury, and think that they were properly admitted. Further, these facts were all testified to without objection at another stage of the trial, and for that reason, as well as for the other, it was not error for the court to admit the testimony. G., H. & S. A. Railway Co. v. Cherry, 44 Tex. Civ. App. 344, 98 S. W. 898.

[3] Appellant also contends that it was an error for the court to permit appellee to testify that it was his intention to have the casket opened at the undertaking parlor at Waxahachie in order to permit the friends of the family to view the remains for the last time before proceeding with the final stage of the funeral services. We do not think such was an error. This was one of the elements of damage which the jury were entitled to consider in arriving at their verdict, and therefore such evidence was not improper.

[4] Appellant also contends that there was no agreement for transportation on any particular car, and that appellant could and would have carried the body on the 5:47 car if the action of appellee's agent, Leatherwood, in transporting the body himself, had not prevented it. But the jury found that there was a contract for transportation on the 3:47 car for Tuesday, September 7th, which finding we think is sufficiently supported by the following testimony of Leatherwood:

"On Monday I phoned Mr. Grissett, who was at that time agent for the Texas Electric Railway at this place, before we were going on Monday. I let him know on Monday about 1 o'clock in the afternoon that they would want to catch the train on Tuesday afternoon. I called him up, and told him that the folks did not know how many were going, so that they had decided not to use a special car, but would use his usual local service out of there. That was 3:47 in the afternoon. He said it was all right, and would arrange for that service."

The testimony of W. J. Grissett also supports this finding, and is as follows:

"He [meaning Leatherwood] said that they wouldn't want a special car; that they had decided to take the 3:47 car north, which was a local car. * * * I told him that I would notify the express people, and I did notify the express people that I would have the funeral party on the 3:47 car going out of Hillsboro on September 7, 1920. I didn't know that the body was going to be carried on that car. I didn't know that he had bought a ticket for the body to go on the 3:47 car, and I knew that I had sold him as ticket agent of the Texas Electric Railway. I knew that I had marked on that ticket 'corpse ticket.' I knew that on the regular schedule the 3:47 car was supposed to be a local car. I knew that the local type car which was to be here at 3:47 was equipped to handle baggage such as this."

Therefore the contract being for carriage on a particular car at a particular time, appellant's failure to transport the body then and on that car constituted a breach of such contract. It was not violated by Leatherwood, as the breach had already occurred before he undertook to carry the body to Waxahachie.

[5] Appellant also contends that the testimony of appellee, stating:

"The delay that occurred in having my wife's body to reach Waxahachie, the uncertainty as to when it would arrive, and the inability to open the casket after reaching there disturbed my mind. I was very much affected. My mind was very much disturbed and very unpleasant"

—was insufficient to justify submission to the jury or the finding by the jury of "humiliation, mental anxiety and anguish." This testimony, taken alone, would not have been sufficient, but this, coupled with a consideration of all the facts and circumstances surrounding the matter involved, we think is amply sufficient to justify both submission of the issue and the finding thereon.

[6] Appellant also contends that the verdict rendered was excessive. Negligence having been found by the jury, appellee was entitled as a matter of law to recover the amount of damages he had sustained. Hale v. Bonner, 82 Tex. 33, 17 S. W. 605, 14 L. R. A. 336, 27 Am. St. Rep. 850. But it is clear that the jury in their calculation fixed the amount of such damage entirely too high. In the case of Wells Fargo & Co.'s Express v. Fuller, 13 Tex. Civ. App. 610, 35 S. W. 824, an award of $2,000 was made for a delay of 27 hours caused by shipping the body of plaintiff's son from Phœnix, Ariz., to Paris, Tex., by a circuitous route, after plaintiff had urgently requested on two occasions that the direct route be taken. In the present case there was a delay of only 1 hour and 20 minutes, and, while the length of the delay is only one of the elements of damage, this fact, when taken with the other circumstances of the case, we think does not warrant a judgment for the sum allowed. The contro-

versy between appellant and Leatherwood at the station was not heard by appellee or known to him until later; the funeral service at Hillsboro was not interrupted; the funeral service at Waxahachie was not altogether prevented, but only delayed 1 hour and 20 minutes, although shortened somewhat on account of the near approach of darkness. In our opinion an award of $500 would have been sufficient. Therefore, if appellee will, within 30 days from this date, enter a remittitur of $500, judgment in his favor will be affirmed; otherwise the case will be reversed and remanded. Revised Statutes of Texas, art. 1631; T. & P. Railway Co. v. Mansell (Tex. Civ. App.) 23 S. W. 549; T. & N. O. Railroad Co. v. Syfan, 91 Tex. 562, 44 S. W. 1064; Waggoner v. Sneed (Tex. Civ. App.) 138 S. W. 219.