**NAYLOR v. LACK.**

No. 14393.

Court of Civil Appeals of Texas. Dallas.

Oct. 12, 1951.

Clifford S. Dillard and Harold B. Wright, both of Dallas, for appellant.

Malone, Lipscomb & Seay and Paul A. Mattison, all of Dallas, for appellee.

BOND, Chief Justice.

This suit was instituted by plaintiff Mallie Naylor against defendant Katherine A. Lack for damages sustained as the result of the death of her husband Edwin E. Naylor, killed in a collision with an automobile alleged to have been in many respects negligently operated by the defendant at the time of the collision. The collision occurred at the intersection of Jefferson, Rosemont, and Tenth Streets in the City of Dallas.

At the intersection of these three streets, Jefferson extends approximately east and west,—a two-lane traffic highway, each lane about 27 feet wide and separated by street-car tracks and right-of-way, the right-of-way being approximately 27 or 28 feet wide; Rosemont extends approximately north and south, is about 30 feet wide, and intersects Jefferson at approximately right angles; Tenth Street enters the intersection of Jefferson and Rosemont at the Jefferson south traffic lane and the extended west line of Rosemont, from approximately

a southwesterly direction. The fatal collision occurred while the deceased was traveling in a westerly direction in the north traffic lane of Jefferson, the defendant in a northerly direction within the intersection of the three streets and near the east curb line of Rosemont. The two automobiles, immediately before the impact, were approaching each other approximately at right angles, the deceased from the east, going west, and the defendant from the south, going north. There is no disclosure in the record that either of the parties slackened speed, applied their brakes, blew their horn, or gave any visible or audible sign or noise as a warning of their approach. A Mr. McKinney, the only witness of the collision, other than the defendant, gave evidence that he viewed the collision from a point back on the west side of Rosemont, about 15 feet from the north line of Jefferson; that from that point he first saw a car approaching from the east on Jefferson (subsequently proven to be the deceased's car) about 15 or 20 feet from the east curb line of Rosemont; and that when he saw the other car (defendant's automobile) it was in the south traffic line of Jefferson, traveling in a northerly direction within the intersection of Rosemont, on the south side of the street car tracks. The witness was then interrogated:

"Q. Tell the jury in your own language what you saw from then until the accident took place. A. Well, there wasn't much to see. I stopped there when I saw the two cars and it just looked to me like they were going to run together, and, well, I hollered 'Hold it,' just as loud as I could, but by that time it said 'Bang!'

"Q. Did you hear either car sound a horn there on that occasion? A. No, sir, I did not.

"Q. Did you see anything that conveyed to your mind the impression that either of the two drivers attempted to apply the brakes? A. No, sir, I did not.

"Q. You were looking at both cars, were you not? A. Yes, sir.

"Q. Did you see anything, Mr. McKinney, that indicated to you that either of the drivers of the two cars saw the other or was aware that it was approaching? A.

Well, I don't think they did." (After the witness had thus testified, the plaintiff's attorney raised objection that the answer was a conclusion, an opinion of the witness. The trial court sustained the objection and allowed the witness to testify only as to what he saw and how it appeared to him.)

The interrogatory continued: "Q. Did you, or not, see anything that conveyed to your mind the impression that the driver of either car saw the other car? A. I don't think they did." (The plaintiff again objected that the answer was a conclusion of the witness. The court overruled the objection, to which action the appellant assigns a point of error which will be hereinafter discussed.) The defendant herself gave evidence of the fatal collision, testifying that she turned her automobile into the intersection of the south traffic lane of Jefferson and the west line of Rosemont, from the southeast traffic lane of Tenth Street, turning gradually to the north, stopping her car just before crossing Jefferson south-lane and the streetcar right-of-way. She further testified that while stopping at the streetcar right-of-way, she again looked to the east and to the west for approaching automobiles and streetcars, and at that point she observed only one automobile (deceased's car) entering the Jefferson north lane from Montclair (the first street east of the intersection here involved); that at that juncture she adjusted her automobile gears to "low" and proceeded north; and, as she was crossing the streetcar right-of-way near the right, or east, side of Rosemont, adjusting the gears of her automobile to high speed, the deceased's car, coming from the east, struck her front fender and "sideswiped" her automobile, thus throwing his car against the right side of her car. Defendant further testified that at the time of the impact she did not see the deceased's car, that it hit her automobile a glancing blow and went on through,—gave her a glancing blow which caused his car to veer to the right, make a turn-about, and then strike the west curb of Rosemont Street as it rounded the north line of Jefferson. The contact blew out his tire,—the operator was killed.

Trial was had to a jury, a verdict rendered and returned into court on October 10, 1950, and, without objection or exception by either party, the court received the verdict. The verdict of the jury, material here, is to the effect that the defendant was negligent in failing to keep a "proper lookout" and such negligence was a proximate cause of the collision; that the deceased was also negligent in failing to keep a "proper lookout" and his negligence was a proximate cause of the collision; that neither of the parties, defendant or deceased, was negligent in failing to sound the horn or apply the brakes of their automobiles; that the defendant was not negligent in failing to drive to the rear of the deceased's automobile; that the deceased in the exercise of ordinary care and caution was negligent in failing to slow down the speed of his automobile to avoid the collision in question, and that such failure was a proximate cause of the collision; and, finally, that the collision was not the result of an unavoidable accident. The issue of damage was not answered.

In the charge to the jury on the issue of failure by each of the parties involved to keep a proper lookout, the court gave the meaning of "proper lookout" as follows: "You are further instructed that by the term 'Proper Lookout,' as used in this charge, is meant that the person, whose conduct is being inquired about, must have looked in such an intelligent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others could have seen, under like circumstances." To this charge the plaintiff excepted to the definition without revealing in what particulars the charge was erroneous, and asked the court to define proper lookout "as such a lookout as would be kept by a person of ordinary care and prudence, under the same or similar circumstances."

Rule 274, Texas Rules of Civil Procedure, provides that: "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. * * *" And where a definition, correction or modification of a

term, word or sentence in a charge, other than given, is requested, such request must be specific and must show in what particular the charge is in error. A mere general exception and request of another and different charge does not properly call error to the attention of the trial court as to enable the court to avoid imposing an illegal burden on the parties, or give the court an opportunity to correct the charge, if in error, before presenting it to the jury. We think the appellant's point of error, critical of the court's charge in defining "proper lookout," is without merit.

■ As we view the facts and circumstances presented in this case, the court recognized the basis for the term "proper lookout," which he submitted, as applying to both the defendant and the deceased. It imports proper elements that should be used in the exercise of due care and precaution. It does not impose any illegal burden on the issues submitted. The mere request for a different form or definition, without urging any defect in the term employed, or any ground of objection, falls far short of a proper presentation of the point raised. Hayes v. Nichols, Tex.Civ.App., 203 S.W. 2d 274; Dean v. Safety Casualty Co., Tex. Civ.App., 190 S.W.2d 750. The charge presents all essential elements, and imposes no improper burden on the operators to look; and, certainly, had either of the parties looked in an "intelligent and careful manner * * * in the exercise of ordinary care and caution for the safety of himself" and of others, the collision likely would not have occurred.

The appellant raises points of error to the effect that because the jury failed to answer further special issues submitted, the court should not have received the verdict, but should have declared a mistrial.

The jury failed to answer special issues, properly submitted, making inquiry as to the defendant's negligence, proximately to cause the collision, as follows: (a) Did defendant drive her car to the left of the center of the intersection of Rosemount and Jefferson Streets immediately prior to the collision? (b) Did defendant fail to drive in her right lane of traffic on Rosemont while crossing the north part of Jefferson immediately prior to the collision? (c) In the exercise of ordinary care and caution, could the deceased, Edwin E. Naylor, have steered his automobile to his left and to the rear of the defendant's car, thus avoiding collision?

■■ It will be observed that these inquiry-issues of fact and the resulting causes of the collision present only additional elements of negligence,—two on the part of defendant, and one as to the deceased's contributory negligence. If the jury had answered all three in the affirmative, in view of the jury's verdict that the deceased was guilty of negligence (1) in failing to keep a proper lookout, (2) in the exercise of ordinary care and caution, the deceased failed to slow down the speed of his automobile to avoid the collision, and (3) that each of said elements of negligence was a proximate cause of the collision,—all fully supported by evidence, no conflict—the plaintiff would not have been entitled to judgment. The verdict of the jury, irrespective of its failure to answer the other issues, supports the judgment of the trial court. Furthermore, appellant's contention that the trial court should have declared a mistrial because of such failures, supra, should not be sustained, for the reason that the court had received the verdict, and, with full knowledge of its contents, the plaintiff at the time made no objection or exception, or urged the court, before the jury was discharged, to declare a mistrial. The contention was subsequently raised for the first time on hearing of plaintiff's contest of defendant's motion for judgment, filed on October 23, 1950. We overrule plaintiff's contention.

■ The appellant further contends that the court erred in overruling plaintiff's objection to the testimony of the witness McKinney, supra, that "In my opinion neither of the parties saw the other." It will be seen that before the witness gave his opinion or impression as to the cause of the collision, he detailed what he saw immediately before the collision and positively stated that neither of the operatives of the automobiles involved slackened the speed of their cars, blew their horns, or gave any visible warning of their approach.

From all the facts and circumstances detailed by Mr. McKinney, he then gave a short rendition of the facts. We are of the opinion that such testimony was not error. However, if objectionable, same is not of such nature as to reverse this cause. Aside from his expressed opinion, his positive related facts, together with those detailed by the defendant which the jury had a right to believe, support the findings of the jury, in that, neither of the parties exercised a proper lookout as a person of ordinary care and prudence would have exercised for his own safety or the safety of others. We overrule appellant's exceptions to the testimony of the witness.

We have carefully reviewed this record in the light of each of appellant's assignments, and, finding no reversible error, they are severally overruled. Judgment of the trial court is affirmed.