Cecil COFFEY et al., Appellants,

v.

FORT WORTH & DENVER RAILWAY COMPANY, Appellee.

No. 3174.

Court of Civil Appeals of Texas.

Eastland.

Nov. 18, 1955.

Rehearing Denied Jan. 6, 1956.

454

Wagstaff, Harwell, Alvis & Pope, Abilene, Maurice Smith, Anson, for appellants.

McMahon, Springer, Smart & Walter, Abilene, C. E. Brownfield, Jr., Anson, for appellee.

GRISSOM, Chief Justice.

Coffey sued the railway company for damages caused by the collision of his truck and defendant's train at an intersection of highway 180 and defendant's tracks in Anson. He alleged negligence as follows: that defendant, its agents, servants, and employees (a) failed to ring the bell or blow the whistle 80 rods from the crossing; (b) allowed weeds and trees to grow west of the intersection so that the view of persons approaching defendant's track was obstructed; (c) permitted weeds and trees to grow on defendant's right of way immediately west of the intersection "to the extent that they obstructed the view of the railway crossing sign;" (d) operated defendant's train at a dangerous rate of speed and failed to keep a proper lookout for persons approaching said track; (e) violated an ordinance by moving a railroad car faster than 8 miles per hour; (f) failed to maintain "an adequate signal bell" to warn traffic or the approach of trains at said intersection; (g) operated defend-

ant's train at 30 miles per hour; (h) failed to keep a proper lookout; (i) failed to install and maintain proper signs to warn traffic of the existence of its tracks at the crossing; (j) failed to ring the bell continuously 80 rods from the crossing; (k) failed to warn plaintiff of the approach of said engine by making any audible signal at a time and distance sufficient to warn an "approaching vehicle" of the approach of the train.

In the alternative, plaintiff alleged that prior to the collision defendant's employees discovered the approach of plaintiff to the crossing at a point sufficient in time and distance that they could, by the use of all reasonable means at their command, have stopped the train before it entered the crossing and thereby avoided the accident; that, upon discovery of plaintiff, defendant's employees realized, or should have realized, plaintiff was in a perilous position and that he either would not or could not extricate himself and they should have used all reasonable means at their command to prevent the collision, but failed to do so. The jury failed to find that any of said acts of alleged negligence was committed by defendant and that same was a proximate cause of plaintiffs' injury and damage.

The jury found, among other things, that (12) immediately before the accident Coffey was in a position of peril; that (13) defendant's employees operating its train discovered his perilous position and realized, or should have realized, that he might not extricate himself therefrom, but that (14) defendant's employees did not discover Coffey's perilous position in time to avoid the accident by the use of all the means at their command. The jury found (18) the collision was the result of an unavoidable accident. The jury also found that (33) immediately before the accident defendant's employees were acting under an emergency and that (34) they did all that an ordinarily prudent person would have done under the same or similar circumstances to avoid the accident.

Judgment was rendered on the verdict for the defendant against Coffey and his insurer, who had paid his compensation, to-wit, intervenor, Commercial Standard Insurance Company, and they have appealed.

Appellant's first and second points are that the court erred in (1) refusing to permit plaintiff to file a trial amendment "to perfect a ground of negligence alleged against the defendant" after the court had sustained an exception to his petition on the day the case went to trial and in (2) thereafter refusing to permit plaintiff to withdraw his announcement of ready.

Plaintiff's amended petition, on which he went to trial, in paragraph IV(f) alleged negligence as follows:

"Defendant, its agents and servants, were negligent in failing to maintain an adequate signal bell to warn traffic of approach of said trains at said intersection."

Defendant's exception, which was sustained, was as follows:

"Defendant specially excepts to sub-section 'f' of paragraph 4 of said pleading for the reason that the facts therein alleged could not constitute an act of negligence on the part of the defendant herein for the reason that no Federal, State or local law requires it to maintain a signal bell at said crossing, and for the further reason that said allegation in sub-section 'f' does not set out with particularity and certainty the kind and character of signal bell and by the pleading 'failing to maintain an adequate signal bell' does not set out with particularity and certainty any standardized bell or any other type of bell sufficient to place this defendant upon notice of what kind of signal device it is charged with failing to maintain, and by the term 'adequate signal bell', the defendant alleges that this term is too general and is a conclusion of the pleader for the reason that it does not set forth with particularity and certainty what plaintiff terms an adequate signal bell."

The record shows that the case went to trial on the morning of September 8, 1954.

On September 9, 1954, before resting his case, plaintiff sought to file a trial amendment which purported to amend not just section (f) of paragraph IV but all of paragraph IV, which amendment, omitting formal parts, was as follows:

"(1) Defendant, its agents and servants maintained an extra-hazardous crossing, in that said railroad tracks crossed a State Highway which carries heavy traffic and as a car or vehicle approaches the railroad tracks from the West there is a blind corner in that there are numerous houses, buildings and obstructions that would prevent such person traveling on the highway from seeing a train approaching from the South until such vehicle was in such close proximity of such crossing that it would be impossible for such vehicle to stop taking into consideration the safety of the driver of such vehicle and his cargo, and such crossing is further hazardous in that the tracks across the highway are located in such a way and manner that a person traveling on the highway could not see such tracks until approximately on such tracks, and further, that a train approaching from the South would be approaching on a curve and could not be seen by a driver of a vehicle approaching from the West until such vehicle had passed a house immediately West of the railroad and upon observing such approaching train it would be impossible for the driver of the vehicle to determine then where the tracks were and that such approaching train from the South or southwest and on the curved track would appear that the train was running immediately into such approaching vehicle and under such facts and circumstances it was the duty of said railway company to maintain proper signal lights, adequate warning devices or flagmen at such hazardous crossing to warn the approaching vehicles from the West."

Defendant objected to the filing of said amendment. The order refusing permission to file recites:

"The above styled and numbered case went to trial on the morning of September 8, 1954.

"On the 9th day of September, 1954, while said case was on trial, and before plaintiff had rested his case, plaintiff's attorneys presented the above and foregoing instrument to the Court and requested permission to file same as a Trial Amendment, to which request defendant duly objected; and

"It appearing to the Court that the collision involved in this case occurred on October 9, 1951; that plaintiff's original petition herein was filed August 26, 1953; that the case has been continued for several terms of court; that more than one month prior to September 8, 1954, the case was set for trial on September 8, 1954, of which setting attorneys for all parties were then notified; that prior to such setting, the court had requested all parties to prepare and file the pleadings on which they expected to go to trial; that plaintiff's attorneys have had abundant time within which to prepare and file their pleadings in this case; that to permit the filing of such instrument would necessitate a discharge of the jury and another continuance of the case; that such request should be refused."

When the court refused to permit plaintiff to file said trial amendment he asked leave to "withdraw his announcement of ready for trial and to continue the case," which request was refused. Plaintiff excepted.

Appellants say that the part of plaintiff's pleadings stricken by the exception, to wit: section (f) of paragraph IV, heretofore quoted, was an attempt to allege as a ground of recovery that the railway company maintained an extra-hazardous crossing. We cannot agree that said allegations show an attempt to allege an extra-hazardous crossing.

Appellants contend that Texas Rules of Civil Procedure, rule 66 authorized filing of

plaintiff's trial amendment. It provides that if during the trial any defect in the pleading is called to the attention of the court the court "may" allow the pleadings to be amended and "shall" do so freely when presentation of the merits will be subserved thereby and the objecting party fails to satisfy the court that allowance of the amendment would prejudice him in maintaining his defense on the merits. Appellants say it has long been held that, when justice demands it, the courts should freely allow amendments, even when the opposite party may be surprised and a delay caused thereby.

Appellants cite, among others, Reiser v. Jennings, Tex.Civ.App., 143 S.W.2d 99 (D.J.C.) and 41B Tex.Jur. 26. It quotes the following from Ann Berta Lodge No. 42, I. O. O. F. v. Leverton, 42 Tex. 18:

> "The announcement of ready, when there are questions of law to be acted upon by the court, is never regarded as absolute and unconditional. It imports, however, that the parties are ready, unless the rulings of the court upon the pleadings require their amendment, and thereby a continuance by one or the other of the parties may become necessary."

Appellants contend the evidence presented the question whether the railway company maintained an extra-hazardous crossing and that the refusal to permit plaintiff's trial amendment to be filed and thereafter refusing to allow plaintiff to withdraw his announcement of ready and to continue the case prevented the real substance of the case from being presented to the jury, thwarted justice and constituted an abuse of discretion.

Appellee answers that appellants did not except to the court's ruling sustaining said exception, did not move for a continuance or a postponement and made no request to file an amended pleading but announced ready for trial; that appellants knew the contents of their pleadings; knew plaintiff had not alleged the railway com-

pany was maintaining an extra-hazardous crossing and waited until 4:30 P.M. on the second day of the trial before attempting to file said amendment. Appellee further says that, contrary to the statement in appellant's brief that they sought to amend only section (f) of paragraph IV of their amended petition, the proffered trial amendment purported to amend all of paragraph IV, wherein plaintiff had alleged eleven specific grounds of negligence, and that the trial amendment alleged a new and different specific ground of negligence, and that it was offered for filing shortly before plaintiff rested his case. The trial amendment does, on its face, purport to amend paragraph IV and does not show an intention to amend only section (f), nevertheless, whether so restricted or not, it was an allegation of a new and different ground of negligence. It charged the railway with maintaining an extra-hazardous crossing. Such ground of negligence had not theretofore been charged. It called for additional evidence. It is not apparent that the railway company was then prepared to meet such a charge. Plaintiff had theretofore filed an original and an amended petition and two supplemental petitions. It is evident from the entire record that due diligence was not exercised in asserting that the railway company was guilty of negligence in maintaining an extra-hazardous crossing. The accident occurred in October, 1951. The suit was filed in August, 1953. The original petition was amended in May, 1954. The case had been continued for several terms. More than a month before the case was set for trial on September 8, 1954, of which setting all parties were notified, the court requested all parties to prepare all pleadings on which they expected to go to trial. On the morning of September 8, 1954, defendant's exception was sustained. Nevertheless, plaintiff did not then seek to amend, nor seek a postponement or continuance but announced ready for trial and waited until the afternoon of the second day of the trial, shortly before closing his case, before requesting permission to amend, not just section (f) but all of Paragraph IV, by alleg-

ing for the first time that the railway company was liable for damages because it maintained an extra-hazardous crossing in 1951 at the place plaintiff was injured. The claim manager for the intervening insurance company handled the claim resulting from this accident. The insurance company took the deposition of Coffey in September, 1953. In December, 1953, Coffey's attorneys took his deposition. When Mr. Coffey and his wife left the hospital and returned to Oklahoma in 1951, less than two months after the accident, they went to and examined the scene of the accident. Their photographer took pictures there in May preceding the trial in September. Plaintiff filed his second supplemental petition in May, 1954 when defendant's exception to paragraph IV (f) of Coffey's trial petition was on file and after a copy had been delivered to his attorneys. Under these circumstances it must be held that appellants did not exercise due diligence in seeking to so amend their pleadings. No excuse is shown for the delay of nearly three years in asserting the existence of an extra-hazardous crossing in 1951. There was no showing of surprise at the testimony of any witness. There was nothing to indicate that, although due diligence was exercised, appellants learned at the trial for the first time of the asserted fact that appellee was maintaining an extra-hazardous crossing in 1951. Ordinarily the allowance of a trial amendment is within the sound discretion of the court. The court's ruling thereon is presumed to be correct and is subject to review only on a showing of abuse of discretion. A court does not abuse its discretion in denying permission to file a trial amendment when the record shows lack of diligence and that it would probably prejudice the opposite party in maintaining its defense. Westinghouse Elec. Corp. v. Pierce, Tex., 271 S.W.2d 422, 424. The trial court is not ordinarily required to permit amendments that would disrupt the orderly procedure and lead to interminable delay. A party whose pleading is held defective is entitled to amend his pleadings for the purpose of curing that defect, notwithstanding his previous announcement of ready, but "this only extends to curing by amendment his defective pleading previously filed and does not authorize him as a matter of right to plead new and independent matters * * * (and) this court will not review its action in rejecting a proffered amendment of this character unless it clearly appears that wrong or injustice has been done thereby." Ann Berta Lodge No. 42, I. O. O. F. v. Leverton, 42 Tex. 18, 21. See also 33 Tex.Jur. 521. Points one and two are overruled.

■■ Appellant's third point is that the court erred in refusing to submit plaintiff's requested issues 1–a and 1–b. 1–a inquired whether defendant failed "to erect and maintain a sign with large and distinct letters placed thereon sufficient to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the trains." 1–b inquired whether such failure was a proximate cause of plaintiff's injury. Vernon's Ann.Civ.St. Article 6370 provides that railroad corporations shall "erect" at crossings "a sign with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars" and that a company that neglects to erect such signs shall be liable for injuries caused thereby. Appellants correctly contend that a party is entitled to have submitted issues of fact raised by the pleadings and evidence which constitute a ground of recovery and that the right to have such issues submitted is to be determined before and not after the verdict. Plaintiff further contends that the requested issues were in substantially correct form; that the requested issues were supported by the testimony of Mrs. Coffey and that the jury could have concluded therefrom that at the time of the accident the sign board was faded, its lettering indistinct and that it blended with the background and "had the sign been painted with distinct letters thereon the plaintiff would have seen the sign, realized there was a crossing there, and proceeded with such caution that he could have stopped before reaching the crossing * * *." Plaintiff makes no reference to where such

testimony may be found. But, without intending to set a precedent, we have found her testimony to the effect that she went to see the railroad crossing when she and her husband returned to Oklahoma and that the crossing sign did not then have any paint on it. Assuming her testimony was sufficient to have justified a conclusion that at the time of the accident the railroad crossing sign was not painted we do not think the judgment should be reversed for the failure to submit said issues. Plaintiff's testimony was to the effect that he did not see the approaching train in time to avoid the collision, not because the railroad cross-arm was not painted, but because there were buildings and growth near the tracks as he approached the crossing from the west; that brush, weeds and trees were there; that he did not see the railroad cross-arm sign by reason thereof and that when he passed a white house near the track and looked to his right and saw the engine, when he heard the noise made by the engine, that he was not looking for a railroad sign, he was looking for a highway sign; that before the injury he did not see the state highway department sign that says "railroad and has a cross on it," but that he has seen it since; that it is about 600 feet from the crossing; that he did not see any other railroad warning sign at or near the track; that he would have seen them if they had been visible; that they were there because he saw them later. He further testified:

"Q. And you were just mistaken about them the day of this accident, weren't you? They were there on the date of this accident? A. Behind some bushes, yes.

"Q. This highway railroad warning sign was behind some bushes? A. Crosses, yes, sir.

"Q. The highway, the highway railroad warning signal that you testified was about 600 feet west of the railroad crossing * * * A. It's visible, yes, sir.

"Q. Was there any bushes or anything to obstruct the vision—your vision of that sign? A. I don't believe so, sir.

"Q. All right. Now, how tall is that *railroad crossing sign?* A. Oh, I imagine it's eight or nine feet.

"Q. Was there anything to obstruct your view of *that* sign on that occasion? A. Yes, sir, *there were a bunch of trees there.*

"Q. A bunch of trees in front of that sign? A. Yes, sir.

"Q. You are sure of that? A. I am sure of that." (Emphasis ours.)

We think it is evident from plaintiff's testimony that the jury could not reasonably have found that the failure to have the railroad cross-arm signal painted was a proximate cause of plaintiff's injury because he testified that there was a railroad crossing sign at said crossing but the reason he did not see it was because it was behind trees and his view was thereby obstructed. Plaintiff's testimony excludes the idea that he did not see the cross-arm sign because it was not painted. He simply said he did not see the signs, whether painted or unpainted, because his view was obstructed. Furthermore, said issues were not raised by the pleadings. See Gulf, C. & S. F. R. Co. v. Hamilton, 17 Tex.Civ.App. 76, 42 S.W. 358, 361. Plaintiff did not allege defendant was negligent in failing to keep the railroad cross-arm signs painted but, on the contrary, be alleged that "(c) Defendant, its agents and servants were negligent in permitting and allowing weeds and trees to grow on its right-of-way immediately west of the intersection, to the extent that they obstructed the view of the railway crossing sign." The point is overruled.

Plaintiff's fourth point is that the court erred in defining "emergency" because it did not instruct the jury that the emergency must not have been brought about by the negligence of the "defendant, its officers, agents, servants, or employees," but restricted such defense only to an emergency caused by the negligence of the employees operating defendant's train. The defense

of emergency was submitted in issues 33 and 34. Said issues and the answers thereto are as follows:

"(33) Do you find from a preponderance of the evidence that, immediately before the accident in question, the employees of defendant's train were acting under an emergency? Answer: Yes.

\* \* \* \* \* \*

"(34) Do you find from a preponderance of the evidence that defendant's employees did all that an ordinary prudent person would have done under the same or similar circumstances to avoid the accident in question? Answer: Yes."

Plaintiff does not allege there was error in said issues but that the judgment should be reversed because of a defective definition. "Emergency" was defined as follows:

"(F) By the term 'Emergency' is meant a condition arising suddenly and unexpectedly, and not proximately caused by the negligent act of the employees operating defendant's train, and which called for immediate action on their part without time for deliberation."

Plaintiff's objection thereto was as follows:

"1. Plaintiff especially objects and excepts to paragraph (F) in the Court's instructions regarding the word 'Emergency' for the reason that there is no evidence in this case that the defendant, its agent and employees had exercised ordinary care immediately prior to the time of the collision in question, and there is no evidence in the case that would authorize the submission of any issue on the question of emergency on the part of the defendant, its agents, servants and employees. And further to that same paragraph for the reason that it states 'not proximately caused by the negligent act of the employees operating defendant's train', for the

reason that a proper definition should state 'not proximately caused by the negligent act of the defendant, its agents, servants, or employees', wherein this definition restricts the negligence to only the employees operating the train."

Appellants say that to sustain the defense of emergency it is not enough that those operating the train be free from negligence but that the defendant must be free from negligence. They cite White v. Munson, Tex.Civ.App., 162 S.W.2d 429; Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545 and 30-B Tex.Jur. 196–198. Those cases sustain the proposition.

■■■ It was not incumbent on plaintiff to submit a substantially correct definition. This is required only when the court fails to submit a definition. R.C.P. 279. It was sufficient to object to the definition given by the court. The objection was sufficient if it specifically and clearly pointed out the matter objected to and the grounds of objection. R.C.P. 274; Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, 1002; Yellow Cab & Baggage Co. v. Green, Tex., 277 S.W.2d 92, 93; Naylor v. Lack, Tex.Civ.App., 243 S.W.2d 240, 243. The objection clearly and specifically pointed out that under the definition the defense of emergency was not available to a defendant if the emergency was brought about by the negligence of the defendant or any of its employees and not just those "employees operating defendant's train" and that plaintiff desired that the jury be informed that an emergency caused by the negligence of any of defendant's agents, servants or employees (not just those operating the train) would not constitute a defense.

■■■ We think appellants are overzealous in their statement that the jury was instructed to answer said issues affirmatively even though the jury might believe the emergency was brought about by the failure of the "employees or agent" of the railroad to properly maintain the crossing sign. Issue 33 inquires whether before the accident the "employees of defendant's

train" were acting under an emergency but issue 34 inquires whether "defendant's employees" did all that an ordinary prudent person would have done to avoid the accident. With issue 34 inquiring about the action of "defendant's employees" this could not be an entirely accurate statement of the situation. Appellant does not point out any question that said definition could adversely affect other than the negligence of any of the defendant employees in failing to keep the cross-arm sign painted. Since, as heretofore shown, that was not an issue in the case, we conclude reversible error is not shown. The burden is on appellants to show that the court erred and that they were probably injured thereby. R.C.P. 434.

■ Appellant's fifth and sixth points are (5) the court erred in allowing defendant to lead the witness Logan, because Logan was the fireman on the train and still an employee of defendant, and (6) in refusing to allow plaintiff to call the witness Ladd under the adverse party rule, Ladd being the engineer on the train in question and still an employee of defendant. The essence of the fifth point is that fireman Logan was called as a witness by plaintiff and testified and at the conclusion of the examination by plaintiff's counsel he was asked the following question: "Was the whistle on that train sounded more that 80 rods before you got to the crossing?" Plaintiff objected to the question as leading. The objection was overruled and the witness answered, "Yes, it was." Assuming the question was leading, before enactment of the Texas Rules of Civil Procedure it was held that "improperly permitting leading questions is not ground for reversal in the absence of a showing that the complaining party was prejudiced thereby." 44 Tex.Jur. 1111. See also W. T. Raleigh Co. v. Cook, Tex.Civ.App., 107 S.W.2d 625, 627 (Writ Dis.); Southern Traction Co. v. Coley, Tex.Civ.App., 211 S.W. 265, 266 (Writ Dis.). The rule has not been made more strict by said rules. See R.C.P. 434. Said witness was permitted to testify without objection to substantially the same thing, as shown on page 213 of the statement of facts, and other witnesses testified without objection to substantially the same thing. Under this situation, we are of the opinion the error complained of did not amount to such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause rendition of an improper judgment. R.C.P. 434; Texas Electric Ry. v. Blank, Tex.Civ.App., 247 S.W. 314, 315 (Writ Ref.); Fleming Oil Co. v. Watts, Tex.Civ.App., 193 S.W.2d 979, 982 (R.N.R.E.).

■ Referring to the sixth point, Ladd was the engineer on the train that collided with plaintiff's truck. Plaintiff called Mr. Ladd as a witness, stating that he was in charge of the train at the time of the accident and that plaintiff was calling him under the adverse party rule. Defendant objected, saying that the adverse party rule did not apply to an employee. The court refused to permit plaintiff to place said witness on the stand under the adverse party rule. However, said witness was thereafter placed on the witness stand by defendant and, on cross-examination by plaintiff, testified that the conductor was in charge of the train. Under R.C.P. 182 the engineer may have been "in control of the particular matters and things under investigation" and, if so, plaintiff should have been permitted to call him as an adverse witness. However, it is unnecessary to decide that matter for the reason that he was placed on the stand by the defendant and he was cross-examined at great length by appellants, the cross-examination covering more than thirteen pages of the statement of facts. Appellants were permitted to lead said witness in their cross-examination. Assuming there was error, we do not see how appellants could have been injured thereby. See R.C.P. 434. Said point is overruled.

The judgment is affirmed.