**Dan B. MARSH, Appellant,**

v.

**Dr. Jasper H. ARNOLD, Appellee.**

**No. 258.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 10, 1969.

Rehearing Denied Oct. 8, 1969.

John H. Holloway, Houston, for appellant.

George H. Hagle, Andrews, Kurth, Campbell & Jones, Houston, for appellee.

BARRON, Justice.

This is a medical malpractice case brought by appellant, Dan B. Marsh, against appellee, Dr. J. H. Arnold, to recover damages for dizziness and loss of equilibrium resulting from certain treatment of appellant by Dr. Arnold, defendant below. The cause was tried before a jury, and based upon the jury's answers to special issues, the trial court rendered judgment in favor of the defendant, Dr. Arnold. From the judgment below, the plaintiff, Dan B. Marsh, has perfected his appeal to this Court.

In response to special issues the jury found that a reasonable medical doctor would have informed a patient of the risk of damage to the vestibular portion of the eighth cranial nerve from use of the drug known as Kantrex, but that the doctor did not fail to inform appellant of this risk; that a doctor using Kantrex would have informed a patient that auditory tests should be made during regular intervals, that Dr. Arnold failed to so inform the appellant, but that such failure was not a proximate cause of the occurrence; that the failure to make auditory tests in advance of using the drug was not negligence; that the failure to make auditory tests during the course of treatment was negligence, but such failure was not a proximate cause of injury and damage; that prescribing the drug Kantrex with plain Phenaphen and Neomycin in combination was not negligence; that Dr. Arnold did not fail to test the renal functions of appellant during the course of the treatment; that Dr. Arnold's failure to obtain audiograms prior to drug treatment was not negligence; that it was negligence to fail to obtain audiograms during the course of treatment, but such failure was not a proximate cause of injury and damage;

that Dr. Arnold's failure to refer the patient to a specialist was not negligence, nor was it negligence to fail to obtain additional sensitivity tests, or in prescribing the drug Kantrex, when defendant knew the plaintiff's infection was sensitive to other drugs. The jury found, however, that the plaintiff, Marsh, sustained damages in the sum of $20,000.00.

This suit allegedly arose by reason of drug treatments administered by Dr. Arnold beginning May 24, 1963 for the purpose of curing a urinary infection complained of by Mr. Marsh. Appellant's suit was based upon an alleged lack of informed consent to the administration of the drug Kantrex (Kanamycin or Kanamycin sulfate); breach of warranty of fitness of the drug administered, which the trial court did not submit; the alleged negligence in failing to obtain audiograms before and during the use of the drug; and alleged negligence in failing to refer the plaintiff-appellant to a specialist and in giving the above drug in combination with other drugs.

Appellant complains on this appeal that the trial court erred in refusing his requested special issues concerning lack of informed consent, in denying his trial amendment to include the "Plain Phenaphen" drug within the consent and negligence pleadings; in failing to disregard certain special issues; and in rendering a take-nothing judgment in favor of appellee-defendant because such judgment is supported by no evidence, and is so against the great and overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust in specific particulars.

Where facts are conflicting or are such that different inferences may be reasonably drawn therefrom, issues of fact are raised. It is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. Olds v. Traylor, 180 S.W.2d 511, 514 (Tex.Civ.App.),

writ ref. The burden of proof in this case was on the plaintiff. Negative answers to the controlling special issues mean in law that plaintiff failed to discharge the burden of proving the facts. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, (Tex.Sup.); Smith v. Safeway Stores, Inc., 433 S.W.2d 217, 218 (Tex.Civ.App.), writ ref., n. r. e. This means that the jury was not persuaded in favor of plaintiff's case by a preponderance of the evidence.

Appellant was referred to Dr. Arnold in May of 1963 after appellant had observed that the last few drops of his urine were brown. Appellee is a specialist in the field of urology. After an examination, it was determined that there was blood in Mr. Marsh's urine. Blood in the urine is a possible indication of cancer in the urinary system, and Dr. Arnold arranged to have appellant admitted to Memorial Baptist Hospital for further examination and diagnosis. He was admitted on May 23, 1963. On the following day appellee visually examined appellant's bladder area using a cystoscope, which was passed up into the bladder. The examination revealed a red inflamed area where the bladder and prostate come together and overlying the seminal vesicles. Dr. Arnold took a biopsy of the area for diagnosis in the laboratory. Dr. Arnold also obtained X-rays of the appellant's bladder, and these X-rays revealed an extremely rare condition, calcified seminal vesicles. It was not thought that the calcified seminal vesicles explained the urinary bleeding or ruled out cancer, so appellee continued with his examination and passed tubes up to appellant's kidneys, observed the urinary function and collected urine specimens for laboratory analysis.

Dr. Arnold then started antibiotic therapy to protect appellant from what appeared to be an inflammatory condition and from an expected cystoscopic reaction. Tests indicated that bacteria from the prostate area were sensitive to four antibiotics, Dimocillin, Chloromycetin, Declomycin and Kantrex. The first antibiotic prescribed by Dr. Arnold following the diagnostic procedures was Declomycin by mouth. After about a day of this therapy appellant took a turn for the worse and he was put on Terramycin by intramuscular injection along with intravenous fluids and other supporting measures. After a day and a half of Terramycin treatment, Mr. Marsh's temperature again rose, and he presented serious symptoms. Dr. Arnold then decided to start him on the antibiotic known as Kantrex. Two days later Dr. Arnold also began the local irrigation of the calcified seminal vesicles with a solution containing the antibiotic neomycin. Appellant continued to improve and was discharged from the hospital in better shape. He had received 15 grams of Kantrex in seven and one-half days. Appellee saw appellant after his dismissal from the hospital, and he was referred to another doctor for the equilibrium problems he was having.

Appellant also saw Dr. William L. Draper, an ear, nose and throat specialist, several times. Dr. Draper performed certain tests on appellant and diagnosed a loss of equilibrium function with no response to tests stimulating the inner ear. Dr. Draper found that appellant was complaining of a hearing loss of 5-years duration which was gradual in onset and progressive in nature. Appellant also complained of tinnitus or a ringing type sound in both ears which he had had for three years. Appellant had worked around loud machinery in a machine shop for about 20 years, and in such a work environment one very often develops a ringing in the ears, according to Dr. Draper. Similarly, the type of hearing loss which appellant had would be commonly called "boilermakers' deafness." Dr. Draper, appellant's only medical witness, stated that appellant had no more hearing loss than would be expected in a man of his age and history and there was no way he could say that appellant suffered any hearing loss while hospitalized. Dr. Draper's testimony was non-specific. There is evidence to show that the witness did not know for what conditions appellant had been treated, what other drugs he had received, or how much Kantrex he had received. Dr. Drap-

er's testimony was that he determined that appellant had a loss of the equilibrium function performed by the labyrinths of the inner ear, but the cause of the condition was obscure. On insurance forms, however, the witness felt obliged to state a cause, and Kantrex was written on the forms as the cause. Dr. Draper testified that the commonly recognized ototoxic effect of Kantrex is deafness, and he knew of no literature which attributed to Kantrex a toxicity to the vestibular apparatus without there also being deafness. He recalled seeing only one case of Kantrex toxicity, and that patient had a hearing loss and very little, if any, vertigo. It was on the basis of this knowledge that the witness wrote Kantrex as the cause on the various forms.

Dr. Arnold testified that the benefits received from drugs, if properly administered, outweigh the bad effects, and that any administration of drugs by a physician is a precarious procedure. Appellee decided to use Kantrex on Monday, May 28, 1963. He gave appellant doses carefully measured to end the infection, and this was considered under the circumstances to be necessary. Kantrex was given to prevent the development of bacterial septicemia, a possible deadly result, and the testimony was that the patient might have died otherwise. There was no other effective treatment available in 1963. Dr. Arnold stated that he would do it again if he considered it necessary, as it was in this case. Appellee had administered Kantrex to about 100 patients, more or less, without bad results. He was sure he had discussed the possible hearing loss with appellant by the use of Kantrex. While the doctor stated that he did not inform appellant of the specific risk of damage to the vestibular portion of the eighth cranial nerve from use of Kantrex, at other times he stated generally that all necessary warnings and disclosures were carefully made, including the possibility of death or serious injury from the use of drugs. Under the circumstances, we do not believe that technical explanations to this appellant were necessary or appropri-

ate. Specific information was not available for any specific person, and the real dangers from the use of the drug are unknown. The witness stated that there is some danger in all drugs. Mr. Marsh did not have a kidney infection. The most sensitive thing in the body to Kantrex is the organ of Corti, the organ of hearing. The eighth cranial nerve or the labyrinth system is not involved by use of Kantrex without first causing deafness. Appellee admitted that Kantrex was given with knowledge by him that the drug *could* cause deafness, and that he was familiar with the related effects of all of the drugs above named. The toxic effects of the drugs is brought to a minimum if administered by those familiar with them, and that his study and experience had caused him to be familiar with them and their possible toxic effects.

The above is a summary of the testimony as viewed most strongly in favor of the verdict of the jury. While the testimony was conflicting and differing inferences might have been drawn therefrom by the jury, it is our duty to uphold the verdict if such is possible and to affirm the judgment of the trial court.

■ Appellant first complains that the trial court failed to submit to the jury requested special issues number five through eight, inquiring whether a reasonable medical practitioner would have informed a patient of the risk of damage to the cochlear portion of the 8th cranial nerve (nerve of hearing) from the use of Kantrex, and related issues. Appellant was complaining of dizziness and loss of equilibrium when he consulted with Dr. Arnold. There was no evidence of any damage to appellant's hearing occurring during the time he was treated by Dr. Arnold. Dr. Draper, appellant's medical witness, stated that when he examined him at a later time appellant complained of a hearing loss of 5-years' duration which was gradual in onset and progressive in nature, and that appellant also complained of tinnitus or a ringing type sound in both ears which he had had

for three years. Dr. Draper further stated that appellant had no more hearing loss than would be expected in a man of his age and history, and there was no way he could say that appellant suffered any hearing loss while hospitalized. There is no probative testimony concerning hearing loss as a result of any treatment by Dr. Arnold, and the requested issues were not raised by the testimony. Moreover, we believe the trial court properly and painstakingly submitted all phases of the case to the jury. The contention is overruled.

■ Appellant further contends that the trial court abused his discretion in denying appellant the right to file a trial amendment on the issues of negligence and informed consent concerning the use of the Plain Phenaphen drug. Appellant states in his brief:

"On deposition the doctor had also testified that none of the drugs given to the patient *in the quantities given* could have produced the loss of equilibrium. Yet, on the trial of the case, he testified that in his opinion, the aspirin in Plain Phenaphen *could* cause this." (Emphasis added).

Dr. Arnold did not testify that Phenaphen was a cause of damage to appellant. His testimony was that Phenaphen contains a salycilate and that the medical literature lists salycilates as a possible cause of dizziness, vertigo or Meniere's disease, without there being some other effect also. The doctor further testified that in his 28 years of practice he had never seen a patient in whom he thought a Meniere's syndrome was produced by any drug, and that he did not believe any drugs caused appellant's trouble. The testimony is not inconsistent. The allowance of a trial amendment is ordinarily within the sound discretion of the trial court and is subject to review only on a showing of an abuse of discretion. Suit was filed on December 9, 1964 and trial was held in November of 1968. The trial court properly could have concluded that appellant failed to exercise

due diligence in timely bringing such matters within his pleadings, or that such an amendment would prejudice the appellee in maintaining his defense, or in this case simply that the "Plain Phenaphen" ground was not raised by the testimony. We overrule the contention. See Coffey v. Fort Worth & Denver Railway Company, 285 .S.W.2d 453, 457, 458 (Tex.Civ.App.), no writ hist.; United Benefit Fire Ins. Co. v. Stock, 344 S.W.2d 941, 943 (Tex.Civ.App.), no writ hist.; Rules 66 and 67, T.R.C.P.

■ Appellant complains of the trial court's exclusion of the drug manufacturer's written comments and instructions concerning Kantrex. Dr. Arnold could not testify that he had read such a paper before giving Kantrex to appellant. Appellee reviewed the document with appellant's counsel and testified in detail as to what was familiar to him, what parts of the document were within his knowledge and what parts he agreed with. The doctor did not accept the document as wholly authoritative. He relied upon his own knowledge and experience with the drug concerning its usage. Most of the tendered exhibit was read into evidence in the presence of the jury by counsel for appellant on cross-examination of Dr. Arnold. Appellant exhaustively cross-examined appellee with the exhibit. The contents of the exhibit having been discussed and reviewed in detail before the jury, we hold that the court did not commit error in excluding it under the circumstances, or at least the error, if any, was not reversible.

■ Appellant has presented twenty-five points of error in his brief. Twenty-one points of error deal with no evidence, insufficient evidence, refusal of a new trial by reason of no evidence, and overwhelming weight and preponderance points pertaining to the various special issues submitted to the jury. Appellant, among other things, contends that the answers to the proximate cause issues should have been disregarded by the trial court, and that such issues should have been found in favor of appellant as a matter of law. We

disagree. We have carefully considered the record in this case, and we have summarized much of the testimony above. After full consideration thereof, we are convinced that genuine issues of fact were presented to the jury and that the trial court submitted the controlling issues in a reasonably proper manner. We hold that the evidence is sufficient under the circumstances to show that appellant was informed of the risks involved in the use of drugs, and that the evidence is sufficient to support the judgment of the trial court.

We do not reach appellee's cross points of error contending that the trial court erred in refusing to grant appellee's motion for instructed verdict and in submitting special issues to the jury for the claimed reason that there was a lack of expert medical evidence to support affirmative findings. Whether medical standards for disclosure in the use of Kantrex under such circumstances were proven, or whether Dr. Arnold testified to or admitted a medical standard, are matters which we deem unnecessary to reach.

The judgment of the trial court is affirmed.