**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-50835

_____


HUGH SYMONS GROUP, plc,

Plaintiff - Appellant,


VERSUS


MOTOROLA, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas

_____


May 28, 2002

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Hugh Symons Group, plc ("Hugh Symons"), appeals the district court's grant of summary judgment to appellee Motorola, Inc. ("Motorola"). We affirm.

## I. Background.

In 1995, representatives of Concept Technologies, Ltd. ("Concept") and Motorola met at an electronics trade show in Las Vegas, Nevada. Concept was a wholly-owned subsidiary of Hugh

1

Symons, both based in the United Kingdom. Concept was seeking electronic components for development of its conceptual handheld computer, the "Pic Pocket." Motorola described its MPC 821 microprocessor as a possible component.

Motorola provided a circuit card and a few MPC 821 chips for Concept's suitability determination. Concept found that the MPC 821 was too slow, but Motorola asserted that the next version would be substantially faster. By 1997, Concept also found that the chip produced screen flicker and had cache/memory problems, making it unsuitable for the Pic Pocket. Motorola continued to indicate that future versions would be improved. In June 1998, however, Motorola announced that it would not produce any new versions of the MPC 821 because its only other users were digital camera manufacturers who did not rely on the features that Concept needed improved.

Motorola suggested another microprocessor, the MPC 823. Concept found that it was slower and required a complete hardware re-design. Motorola replied that version "e" would fix the problems. In early 1999, however, Motorola announced a six-month delay of the MPC 823e. Concept decided that it had missed its marketing window for the Pic Pocket and abandoned the concept.

In April 2000, Concept sued Motorola under federal diversity jurisdiction in the Western District of Texas for violating Texas's Deceptive Trade Practices Act ("DTPA"), breaching an oral contract, and acting fraudulently and with negligent misrepresentation regarding the quality, grade, and characteristics of the MPC 821.

2

On December 29, 2000, Hugh Symons was substituted by motion as plaintiff of record.

The parties consented to trial by a magistrate judge. In April 2001, Motorola filed motions for summary judgment on all claims. On August 2, 2001, the magistrate judge issued a Memorandum Opinion and Order with a Final Judgment granting summary judgment to Motorola. He found that Hugh Symons was not a "consumer" under the DTPA because it had over $25 million in gross assets; that Hugh Symons failed to satisfy the statute of frauds; and that the tort claims sounded in contract and failed because there was no breach of contract. Hugh Symons appeals each claim.

## II. Standard of Review.

We conduct a *de novo* review of a grant of summary judgment, ensuring that no genuine issue of material fact exists and that judgment in favor of the appellee was warranted as a matter of law. *See St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 712-13 (5th Cir. 2002); *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-movant, reflects no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Hall v. Gillman, Inc.*, 81 F.3d 35, 36-37 (5th Cir. 1996).

Unsubstantiated assertions are not competent summary judgment evidence. *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527,

1533 (5th Cir.)(unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence), *cert. denied*, 513 U.S. 871 (1994). Mere conclusory allegations are not competent summary judgment evidence and are insufficient to overcome a summary judgment motion. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

**III. Analysis.**

**A. DTPA Claim.**

Hugh Symon claims that Motorola violated the DTPA, TEX. BUS. & COM CODE § 17.44, by "misrepresenting the quality, grade and characteristics of its MPC821 micro processing chip." The elements of a valid DTPA complaint are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Chamrad v. Volvo Cars of North America*, 145 F.3d 671, 672 n.3 (5th Cir. 1998) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995)). A consumer is defined as:

> [A]n individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, *except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.*

*Id.* § 17.45(4)(emphasis added). Therefore, a complaining plaintiff under the DTPA must be a consumer meeting the definition of § 17.45(4). *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705,

4

707 (Tex. 1983).

"Assets" for the purposes of § 17.45(4) means "gross assets." *See Eckman v. Centennial Savings Bank*, 784 S.W.2d 672, 673 n.3, 674 (Tex. 1990). Hugh Symons's total gross assets exceed $25 million, disqualifying it as a "consumer" capable of bringing a claim under the DTPA. It contends, however, that Concept Technologies was the interested party bringing the DTPA suit and that Concept had less than $25 million in assets. Further, Hugh Symons asserts that it transferred its shares in Concept to Elata, plc, on October 17, 2000.[1] Symons then substituted in as the plaintiff on December 29, 2000. Concept then assigned its interest in the DTPA suit to Symons on March 5, 2001.

Where a DTPA plaintiff is asserting a claim acquired by assignment, the assignor's consumer status controls. *PPG Indus., Inc. v. JMB/Houston Ctr. Partners Ltd. Partnership*, 41 S.W.3d 270, 279 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Therefore, Hugh Symons contends, because Concept held less than $25 million in assets, it was a consumer under the DTPA and Hugh Symons, as its assignee, may pursue the suit. We disagree. At all pertinent times – at the time of the alleged violation of the DTPA and at the time that the lawsuit was brought – Concept was a wholly-owned

---

[1] Elata is, however, "a sister company of the Assignee [Symons] in that the voting shares in both companies are owned by the same people and in the same proportions." *See* Appellant's Record Excerpts, tab 8 at 1 ¶ 0.2.

5

subsidiary of Symons. Despite the later transfer of shares within the Hugh Symons family of businesses, § 17.45(4) acts to bar an entity controlled by another with assets of greater than $25 million from bringing a DTPA suit because it is a non-consumer.

We affirm the magistrate judge's ruling that Hugh Symons and Concept were not consumers under the DTPA.

## B.  Breach of Contract Claim.

Hugh Symons alleges that Motorola breached an oral contract. It admits that this oral contract is subject to the statute of frauds.

The Texas statute of frauds requires a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is a sought for the sale of any goods for the price of $500 or more.  The lack of such a writing bars enforcement of the alleged oral contract. *See* TEX. BUS. & COM. CODE § 2.201(a).  Where a plaintiff seeks to enforce an alleged oral contract, it has the burden of proving that the statute of frauds is satisfied. *Vehle v. Brenner*, 590 S.W.2d 147, 152 (Tex. Civ. App.--San Antonio 1979, no writ); *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991).

Hugh Symons claims two exceptions to the statute of frauds. First, it claims that, as between merchants, it received a writing in confirmation of the contract in accordance with § 2.201(b). Second, it claims that the alleged contract is valid because it was

in respect to goods for which Symons made payment and accepted under § 2.201(c)(3).

On the first point, Hugh Symons asserts that "[a] flurry of correspondence was exchanged between the parties confirming the agreement to supply suitable MPC 821 chips in sufficient quantity for commercial distribution of the Pic Pocket," citing by example a brief excerpt of a January 1998 email from Motorola to Hugh Symons regarding MPC 821 pricing. Read in full, the email does not confirm any such agreement. At best, it can be read as preliminary information being exchanged between parties, one of whom is developing a product not yet in production. There is no language expressing or contemplating a final agreement or settling on terms; it is an overture to further joint discussion or ongoing negotiations, not a binding agreement. *See Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001). Hugh Symons's other brief examples are similarly unconvincing.

As to its second point, Symons points to a copy of a "PRO FORMA INVOICE" showing the shipment of an MBX821 Board valued at $460 from Motorola to Hugh Symons on January 13, 1998, claiming that this demonstrates "payment and accept[ance]" under § 2.201(c)(3). The invoice, however, is clearly labeled "pro forma," lists only the board's value (as opposed to its cost), does not demand payment, and was intended to accompany "commodities licensed by the U.S. for ultimate destination UNITED KINGDOM." Hugh Symons

has produced no receipts, drafts, electronic transfer records, or checks to show that it ever paid Motorola for any component or service. It points instead to its response to Motorola's interrogatory, indicating that it (or Concept) paid for £150,000 worth of "Components and Sundry Production costs," which "must have" included amounts paid to Motorola for the chips and boards. It offers no evidence other than this conclusory statement. An unsubstantiated or conclusory assertion is incompetent summary judgment evidence and cannot defeat a motion for summary judgment. *Celotex*, 477 U.S. at 324; *Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533.

Hugh Symons has not shown that it meets any exception to the statute of frauds.

## C. Fraud and Negligent Misrepresentation Claims.

Generally, under Texas law, a plaintiff may not recover in tort for claims arising out of an unenforceable contract under the statute of frauds. *Haase,* 62 S.W.3d at 799. To the extent, however, that a plaintiff's fraud claim seeks out-of-pocket damages incurred by relying upon a defendant's misrepresentations, those damages are not part of the benefit of any bargain between the parties. They therefore might be recoverable without contravening the statute of frauds. *Id.* at 799-800.

Hugh Symons asserts that it (or Concept) spent $2.5 million based on Motorola's allegedly negligent misrepresentation of its

8

microchip's performance and fraudulent promises of improvement. It claims that it may recover under *Haase*, which was decided after the instant lawsuit was litigated. We need not determine whether that is true because Hugh Symons has produced no competent evidence of its expenditures.

In response to Motorola's Interrogatory Number Five, which required Hugh Symons to "state the full amount of money you seek and describe the manner in which the amount was calculated," Hugh Symons reported that it was seeking $2.5 million (converted from £1,554,000 at the rate of £1 = $1.6143) for "Components and Sundry Production costs . . . Employment Costs . . . General Overheads . . . Depreciation of Fixed Assets . . . Finance Charges . . . [and] Group Facilities[] – Office Rental, HR, MIS, etc." It asserts that the respective figures were extracted from its accounts after an audit, but has produced no verification of its interrogatory response or any document whatsoever supporting its expenditure claim. At oral argument, counsel for Hugh Symons admitted that the figure of $2.5 million remained unverified.

We might be concerned that Hugh Symons had not been on sufficient notice that it needed to verify its response if Motorola's motion for summary judgment was based on an issue of law. A review of the filings in the trial court, however, reveals that Motorola included the entire interrogatory package, with Hugh Symons's responses, as attachments to two of the three motions for

summary judgment,[2] challenging certain of Hugh Symons's assertions. Most notably, however, in Hugh Symons's response on the fraud, negligent misrepresentation, and DTPA claims, it specifically claimed that it "had expended at least two and one half million dollars in development of hardware and software" and that "[t]he damages sought by [Hugh Symons] are the two and one half million dollars spent developing the software and hardware for a wireless device that never worked because the MPC 821 never performed as Motorola said it would." It is clear that Hugh Symons was responding to Motorola's challenge to its claims of fact and had sufficient notice that it needed to verify or substantiate its otherwise-unsupported allegation of expenditure. It failed to do so. Again, an unsubstantiated assertion is incompetent to defeat a motion for summary judgment. *Celotex*, 477 U.S. at 324; *Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533.

## IV. Conclusion.

For the reasons stated herein, we AFFIRM the trial court's grant of summary judgment on each issue.

---

   [2] The interrogatories were attached to the motions for summary judgment on the DTPA and breach of contract issues.