United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 18, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-60053
Summary Calendar

_____

MELBA PIPKIN,

Plaintiff-Appellant,

versus

PIPER IMPACT, INC., ET AL,

Defendants,

JANICE COBB and QUANEX CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Northern District of Mississippi
(Civil Action No. 3:02CV044-B-A)

_____

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM[*]:

Appellant Melba Pipkin ("Pipkin") sued Appellee Piper Impact, Inc. ("Piper"), Janice Cobb

("Cobb"), and Quanex Corporation (collectively, "the Defendants") for retaliatory discharge and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

intentional infliction of emotional distress. The district court granted summary judgment to the Defendants. We AFFIRM.

## I. FACTS AND PROCEEDINGS

Pipkin began working for Piper on January 4, 1999, as a press operator. On July 31, 2000, Pipkin was injured while performing her job at Piper. As she operated her press, a piece of steel fell from behind her and crushed the third, fourth, and fifth toes on her left foot, amounting to a loss of about one-third of her left foot. Pipkin had five operations on her left foot, culminating in the amputation of a large portion of that foot.

On December 4, 2000, Pipkin's doctor cleared her to return to work in a light-duty capacity. On March 5, 2001, Pipkin returned to work at Piper, but she only worked for short periods of time over the next nine months.[1] On March 19, 2001, Pipkin filed a Petition to Controvert with the Mississippi Workers' Compensation Commission for her injuries.[2]

On December 17, 2001, Cobb informed Pipkin that: (1) she was being terminated, and (2) under Piper's administrative policies, she should have been terminated on March 5, 2001, when she returned to work. The Piper employee manual states that

> Eligible employees may request up to a maximum of 26 weeks of leave within any 12 month period. Any combination of FMLA and personal leave may not exceed this maximum limit. Failure to return from an authorize[d] leave within 26 weeks will result in termination.

---

[1] Pipkin's brief indicates that she "worked for Piper on and off as her injury would allow." Piper admitted that Pipkin satisfactorily performed her job until December 17, 2001, within the restrictions assigned by her physician.

[2] The First Amended Petition to Controvert indicated that Piper "partially" furnished medical treatment to Pipkin, but she sought penalties in her Petition because "all medicals not provided [sic]." The Petition also indicated that the "other matters in dispute" were "loss of wage earning capacity, extent of disability, and whether claim is scheduled member only or to body as a whole, resulting in total and permanent loss."

Pipkin violated this policy because she did not return to work by January 31, 2001, but waited until March 5, 2001.

After being terminated, Pipkin filed suit alleging retaliatory discharge and intentional infliction of emotional distress ("IIED"). The district court granted summary judgment to the Defendants. Pipkin appeals.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995) (en banc). Summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We view the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). However, unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, PLC v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).

## III. DISCUSSION

### A. Retaliatory Discharge

In *Green v. Amerada-Hess Corp.*, the plaintiff began working for the defendant in January 1972, sustained an employment-related injury in April 1973, and filed an accident report the day after the accident. 612 F.2d 212, 213 (5th Cir. 1980). The plaintiff continued working for the defendant until he was terminated in July 1975, after which he alleged that he was dismissed in retaliation for pursuing his right to workmen's compensation. *Id.* at 213-14.

3

When this Court decided *Green* in 1980, Mississippi law did not "explicitly provide for a civil action for a retaliatory discharge[, and] Mississippi courts [had] not specifically decided the question whether an employer may be liable in damages for discharging an employee for pursuing his workmen's compensation rights." *Id.* at 214. Given the open nature of this question, the Court had to "decide th[e] issue as [it] believe[d] a Mississippi court would decide it." *Id.* Due to the district court's greater familiarity with local law, this Court gave "special weight . . . to the determination of the district court [that] . . . an employer under Mississippi law has the legal right to discharge employees employed for an indefinite term without any justification." *Id.* This Court held that

> [w]hile the harshness of the terminable at will rule is subject to exception in light of express legislative action, the absence of explicit statutory provision of a civil remedy in the Mississippi workmen's compensation statute argues against recognizing a cause of action for retaliatory discharge.

*Id.*

The plaintiff in *Green* argued that "even though Mississippi courts have not yet recognized a cause of action for retaliatory discharge, it is likely that they will do so when faced with an appropriate case in light of recent precedents from other jurisdictions finding such a cause of action." *Id.* This Court declined the plaintiff's "invitation to create law for Mississippi," holding that it was inappropriate for a federal court to fashion social policy for a state. *Id.* at 214-15.

Like the plaintiff in *Green*, Pipkin asks this Court to recognize a cause of action for retaliatory discharge under Mississippi law.[3] In her brief, Pipkin argues that the Mississippi Supreme Court has

---

[3] In her brief, Pipkin asserts that the Fifth Circuit has the power to create a public policy exception to the employment-at-will doctrine. In *Kelly v. Mississippi Valley Gas Co.,* the Mississippi Supreme Court indicated that it was within the province of the legislature, and not the courts, to create a cause of action for retaliatory discharge. 397 So. 2d 874, 876-77 (Miss. 1981). Pipkin argues that "courts, not legislatures, created the employment-at-will doctrine. Accordingly, it can be judicially modified, if a court so decides." *See, e.g., Laws v. Aetna Finance Co.*, 667 F.

4

abandoned its "hard-line adherence to the employment-at-will doctrine" by recognizing at least two public policy exceptions to the doctrine. *See, e.g., Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442-43 (Miss. 1999) ("There is an action based on a public policy exception to the employment-at-will doctrine when (1) an employee refuses to participate in an illegal act; or (2) an employee is discharged for reporting illegal acts of his employer to the employer or anyone else.") (citing *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993)). Pipkin asserts that the Mississippi Supreme Court even "floated the idea of addressing the [employment-at-will] doctrine in its entirety" in *Shaw v. Burchfield*, 481 So.2d 247, 254 (Miss. 1985). Based on this alleged evolution in Mississippi case law, Pipkin urges this Court to find that "terminating an employee for filing a compensation claim is . . . against public policy and should not be allowed."

"Under the principles announced first in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, (1938), our answer to this question must be based on [] state law, as determined by the state legislature and the highest state court." *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir. 1977). To date, the Mississippi legislature has not enacted a cause of action for retaliatory discharge. In *Green,* the Mississippi Supreme Court had not yet spoken on this issue, but now it has. In a case with facts similar to the present one, the Mississippi Supreme Court refused to create a cause of action for retaliatory discharge. *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874, 877 (Miss. 1981) ("We . . . decline to create a common law tort action against an employer by an employee who has been

---

Supp. 342, 347 (N.D. Miss. 1987) (referring to the employment-at-will doctrine as a "judicially promulgated doctrine") (quoting *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) (Kilgarin, J., concurring)). The Court need not reach this issue because the Mississippi Supreme Court has already answered the question of whether there is a retaliatory discharge cause of action under Mississippi law.

discharged for filing a workmen's compensation claim."). Two years ago, the Mississippi Supreme Court reinforced *Kelly* by refusing to recognize a cause of action for retaliatory discharge in *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So.2d 845, 851 (Miss. 2001). Under *Erie*, this Court is bound by the decisions of the Mississippi legislature and the Mississippi Supreme Court. *Loucks*, 551 F.2d at 746. This Court declines to create a cause of action for retaliatory discharge for a state that has refused to do so itself.[4]

Pipkin suggests that "[t]o assist in setting forth this exception, certification should be sought to the Mississippi Supreme Court." This Court has, in certain circumstances, certified questions of Mississippi law to the Mississippi Supreme Court. *See, e.g., Ramsay v. Omnibank*, 215 F.3d 502, 504 (5th Cir. 2000). However, "[c]ertification is justified only when the state supreme court has provided no authoritative guidance, other courts are in serious disarray and the question cries out for a definitive ruling." *Kremen v. Cohen*, 314 F.3d 1127, 1136 (9th Cir. 2003) (Kozinski, J., dissenting); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997) ("[A]bsent genuinely unsettled matters of state law, we are reluctant to certify."). Because Mississippi law is settled, although settled in a way unfavorable to Pipkin, we decline to certify this question to the Mississippi

---

[4] The Court notes that a cause of action for retaliatory discharge exists in certain circumstances:

> [E]ven at-will public employees are afforded certain protections under federal law in the enjoyment of the benefits of their employment status. Thus, though a public employee may generally be summarily terminated without redress for bad reasons–at least in the sense that a reasonable person might find the reasons offensive or even fundamentally unfair–federal case law arising under claims brought pursuant to the enabling provisions of 42 U.S.C. § 1983 (1994) has established that a public employee terminated in retaliation for speaking out on matters of public interest may obtain appropriate redress in a civil action. *Connick v. Myers*, 461 U.S. 138, 148 (1983).

*East Miss. State Hosp. v. Callens*, 2001 Miss. App. LEXIS 531, at *9 (Dec. 18, 2001).

Supreme Court.

## B. Equitable Estoppel

According to Pipkin, "the Defendants' claims that the employment-at-will doctrine protects their actions [] are barred by the doctrine of equitable estoppel." Specifically, Pipkin asserts that because Piper did not terminate her on March 5, 2001, when she returned to work, then they could not terminate her on December 17, 2001, for failure to return to work within 26 weeks.

The Mississippi Supreme Court held that

> Mississippi follows the common law rule that a contract of employment for an indefinite term may be terminated at the will of either party. The employee can quit at will; the employer can terminate at will. This means either the employer or the employee *may have a good reason, a wrong reason, or no reason for terminating the employment contract*.

*Kelly*, 397 So. 2d at 874-75 (emphasis added). For this reason, Piper had the right to terminate Pipkin at any time, and it could not be equitably estopped from doing so based simply on a failure to terminate her earlier. Therefore, Pipkin's argument is without merit.

## C. Intentional Infliction of Emotional Distress

In *Hatley v. Hilton Hotels Corp.*, this Court stated that

> The standard for intentional infliction of emotional distress in Mississippi is very high: the defendant's conduct must be "wanton and wilful and [such that] it would evoke outrage or revulsion." *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (citations omitted).

308 F.3d 473, 476 (5th Cir. 2002). Pipkin bases her IIED claim on her termination, which she characterizes as "a calculated and premeditated ambush on an employee's means to earn a living." The mere fact that Pipkin was terminated cannot constitute the basis for an IIED claim. Losing a job is never pleasant, but it is far from outrageous in character, extreme in degree, and beyond all possible

7

bounds of decency. *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982-83 (N.D. Miss. 1996); *Jenkins v. Grenada*, 813 F. Supp. 443, 446-47 (W.D. Miss. 1993); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001) ("A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes."). Therefore, Pipkin's argument is without merit.

## IV. CONCLUSION

In conclusion, we find that there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law Accordingly, we AFFIRM the judgment of the district court.